**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| JAMES L. HARBOUR, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 05-1252-MLB |
| | ) | |
| JOHN THOMAS PETERS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This case comes before the court on defendant's motion to dismiss for insufficiency of service of process. (Doc. 26.) The motion has been fully briefed and is ripe for decision. (Docs. 26, 30, 31.) Defendant's motion is DENIED for reasons set forth herein.

**I.  FACTS AND PROCEDURAL HISTORY**

This case arises from an automobile collision that occurred in Sumner County, Kansas, on May 27, 2003. Plaintiff alleges that he suffered injuries from the accident, which was caused by defendant's negligence in operating his vehicle. (Doc. 23.) The case was originally filed in federal court in the Eastern District of Arkansas on May 12, 2005, almost two years after the collision. On May 23, 2005, plaintiff attempted to serve defendant by certified mail at 1207 North Blaine, Wellington, Kansas 67152. That effort was apparently unsuccessful, as plaintiff does not mention it again. The next day, May 24, plaintiff sent a copy of the summons and complaint to the Sumner County Sheriff's Department for service at the Blaine Street address. That process was returned to plaintiff unexecuted, with a note stating that defendant had "moved - Winchester, Kansas Jefferson

County." (Doc. 30 at 3.)  Armed with this new information, on June 7, plaintiff sent process papers to the Jefferson County Sheriff's Department; however, deputies were unable to effect service, and one deputy reported that defendant was thought to be residing in Sumner County.

On June 14, 2005, plaintiff attempted to serve defendant via certified mail at another Sumner County address, 416 Walnut Street, South Haven, Kansas (South Haven address or South Haven residence). Delivery was attempted on June 18.  The facts show that the mail carrier provided the papers to Connie Greenwood at the South Haven address.  Plaintiff asserts that Greenwood is defendant's mother. (Doc. 30 at 4.)  Greenwood tried to decline the documents, informing the postman that defendant did not reside at that address.  The carrier urged Greenwood to sign anyway, which she did.  Based upon Greenwood's signature on the return receipt, on July 13, 2005, plaintiff filed an affidavit of service in the district court in Arkansas.  (Docs. 26 exh. B; 30 at 4.)

On that same date, plaintiff's counsel received correspondence from an attorney who had been retained by defendant's auto insurance carrier.  Within a few days, plaintiff's counsel was also contacted by a claim's agent with defendant's insurance carrier, who called to inquire about the details of the collision.  Plaintiff maintains that neither he nor any of his counsel or representatives contacted defendant's insurance company, thereby implying that defendant had received actual notice of the suit and had asked his insurance carrier to take action on his behalf.  (Doc. 30 at 3.)

On July 18, 2005, defendant filed a motion to dismiss for failure

to effect proper service.  (Docs. 3; 4; 26 at 2.)  The district court found that it had subject matter jurisdiction to hear the case, but that venue was improper in the Eastern District of Arkansas.  (Doc. 7.)  Accordingly, the district court in Arkansas ordered the case transferred to the District of Kansas, after which the case was assigned to this court.  Since the case was transferred, plaintiff has twice been given leave to amend and serve his complaint.  (Docs. 10; 21.)  The last of these orders gave plaintiff until September 26, 2005 to serve defendant with the amended complaint.  On October 5, 2005, plaintiff filed a notice stating that he had completed service by publication in a newspaper published in Sumner County, Kansas.  (Doc. 25.)

The evidence also shows that during the summer of 2005, plaintiff hired a private investigator to locate, and possibly serve, defendant. The investigator discovered that, as of August 15, 2005, the South Haven residence had been vacated, and that neither defendant nor Greenwood could be located.  The investigator did locate two of defendant's brothers in nearby Arkansas City, Kansas.  However, they claimed that they did not know where defendant was living.  Although not determinative, the investigator stated that he felt defendant's brothers were being deceptive on this point.  (Doc. 30 at 6; exh. C.)

## II. ANALYSIS

Defendant seeks dismissal based on insufficiency of service of process under Federal Rule of Civil Procedure 12(b)(5).[1]  Plaintiff

---

[1] Defendant actually refers to Rules 12(b)(4) and 12(b)(5). (Doc. 26 at 1.)  However, Rule 12(b)(4) attacks the content of the process (usually the summons), while Rule 12(b)(5) attacks defects in the manner in which process was served.  Oltremari v. Kan. Soc. &

bears the burden of proving that service attempted on his behalf was properly made.   Trans Chem. Ltd. v. China Nat. Mach. Imp. & Exp. Corp., 161 F.3d 314, 319 (5th Cir. 1998) (adopting underlying opinion of the district court, including relevant point of law at 978 F. Supp. 266, 298 (S.D. Tex. 1997)).   Valid service of process is a prerequisite to a federal court's asserting personal jurisdiction over a defendant.   Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104, 108 S. Ct. 404, 409, 98 L. Ed. 2d 415 (1987).   In order for service to be effective to confer personal jurisdiction, it must satisfy both due process and the applicable statutory requirements. Brand v. Mazda Motor of Am., Inc., 920 F. Supp. 1169, 1171 (D. Kan. 1996); see also Campbell v. Bartlett, 975 F.2d 1569, 1574-75 (10th Cir. 1992) (analyzing whether service satisfied both the New Mexico statutory requirements and due process).   Defendant raises no due process objections; therefore, the focus must be on statutory compliance.

Federal Rule of Civil Procedure 4(e) provides two means to obtain service on an individual:

> (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or
>
> (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the

---

Rehab. Serv., 871 F. Supp. 1331, 1349 (D. Kan. 1994); 5B Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004).

>           summons and of the complaint to an agent
>           authorized by appointment or by law to receive
>           service of process.

Plaintiff places no reliance on Rule 4(e)(2), choosing instead to argue that service was effective pursuant to the laws of Kansas, which are made applicable under Rule 4(e)(1).  (Doc. 30 at 7-8.) Accordingly, the court expresses no opinion regarding validity of service under Rule 4(e)(2).

The facts show that plaintiff attempted personal service, service by certified mail, and service by publication.  It is undisputed that personal service was never perfected.  Defendant argues that service by publication failed to comply with statutory requirements and, in any event, is not sufficient to support a personal judgment against him.  (Doc. 26 at 5-8.)  Plaintiff does not dispute this argument in his brief, and it is therefore conceded for purposes of this motion. The real dispute centers around whether service by certified mail was accomplished and, if not, whether the case should be dismissed.

Kansas law authorizes service of process on an individual by certified mail.  K.S.A. 2004 Supp. 60-304(a).[2]  In order to comply with that statutory provision, the process must be "addressed to an individual at the individual's dwelling house or usual place of abode."  Id.  Plaintiff argues that service by certified mail was accomplished when the process addressed to defendant at the South Haven residence was signed for by his mother.  (Doc. 30 at 8-9.) Defendant counters that he did not live at the South Haven address

---

[2] K.S.A. 60-304 was amended on May 13, 2005; however, the only relevant alterations were replacing the words "certified mail" with "return receipt delivery," thereby conforming this statute to the terminology used in K.S.A. 60-303(c).  2005 Kan. Sess. Laws 1484-85.

when service was attempted.  (Doc. 31 at 2.)

The plain language of K.S.A. 60-304(a) requires that service by certified mail be addressed to defendant at his dwelling house or usual place of abode.  Plaintiff has the burden to put forth evidence establishing this fact, but has failed to do so.  In fact, the only evidence put forth by plaintiff is to the contrary.  A document entitled "Change of Address or Boxholder Request Format - Process Servers," shows that according to the United States Postmaster at South Haven, Kansas 67140, defendant most definitely did not live at the 416 Walnut Street address, at least as of November 3, 2005.  (Doc. 30 exh. F at 2.)  Similarly, defendant submitted an affidavit from his mother stating that, on the day the process was delivered, she informed the postman that defendant did not reside at the South Haven address.  Again, plaintiff does not dispute this averment.  Finally, the court notes from one of plaintiff's exhibits that defendant may be 58 years old.  Id. exh. B, sub exh. I at 2, Finder Report.[3]  If so, he is not a recently emancipated youth against whom there might be some limited inference that he may still reside with his mother. Taken collectively, the evidence merely shows that plaintiff found the dwelling house of defendant's mother; but it does not show that the South Haven residence was defendant's dwelling house or usual place

---

[3] These "Finder Report[s]" and related documents are not self-explanatory.  Thus, the court makes no attempt to interpret what information contained in these documents is accurate, what is speculative, and what may have been provided as search criteria by plaintiff's agents.  Instead, the court simply looks to the accompanying affidavit of Dan Bowlin.  (Doc. 30 exh. B.)  The only reference in that affidavit to these reports occurs in paragraph 11, where Bowlin asserts that the reports show defendant is related to Connie Greenwood.  Accordingly, that is the only fact that these reports help establish.

-6-

of abode.

Plaintiff argues that, under Kansas law, a person's dwelling house has the same meaning as domicile.  Id. at 9.  Under that theory, plaintiff further contends that defendant retains his old domicile until he establishes a new one.  Id.  Finally, plaintiff relies on cases concluding that, under certain conditions, unmarried individuals who previously resided with their parents are considered domiciled with those parents until a new domicile is established.  Id. at 9-10.

First, there is no evidence regarding plaintiff's marital status. Moreover, the only information related to his age suggests that he may be 58 years old.  Finally, the evidence shows a number of potential prior dwelling houses for defendant: the South Haven Residence; a relative's home in Winchester, Kansas; and, a dwelling on Blaine Street in Wellington, Kansas.  It is anyone's guess as to which of these places, if any, was defendant's last dwelling house or place of abode.  Accordingly, the court finds that plaintiff has failed to meet his burden to prove that service was perfected under K.S.A. 60-304(a).

That conclusion notwithstanding, plaintiff argues that service should be treated as having been perfected under K.S.A. 60-204.  (Doc. 30 at 11.)  That statute provides, in relevant part,

> In any method of serving process, substantial compliance therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court in which his or her person, status or property were subject to being affected.

However, the mere fact that plaintiff has made some effort at compliance, coupled with some suggestion that defendant is aware of

-7-

the action, does not amount to substantial compliance with the requirements for service of an individual by certified mail. On the contrary, "the Kansas Supreme Court has consistently held that, when applying section 60-204, courts must find that the defendant's awareness of the suit results directly from the plaintiff's substantial compliance with the service of process." Burnham v. Humphrey Hospitality REIT Trust, Inc., 403 F.3d 709, 716 (10th Cir. 2005). In other words, defendant's knowledge of the suit must arise from plaintiff's efforts to effect service. See also Cook v. Cook, 32 Kan. App. 2d 214, 220, 83 P.3d 1243, 1247 (2003).

Plaintiff has failed to meet his burden of showing that defendant's knowledge of the case arose from plaintiff's efforts at service. Plaintiff simply has not put forth evidence to show that the process served on Greenwood was relayed to defendant, physically, orally, or otherwise. Moreover, as noted earlier, plaintiff failed to establish that the South Haven residence was defendant's dwelling house or usual place of abode at the time service was attempted. Thus, even if defendant was made aware of the proceedings via service on his mother, the court finds that there can be no substantial compliance under section 60-204 when plaintiff has failed to prove that he mailed the process to defendant's dwelling or usual place of abode.

Plaintiff next argues that he should be granted an extension of time under K.S.A. 60-203(b) in order to perfect service. (Doc. 30 at 13.) Defendant argues that plaintiff does not meet the requirements for relief under section 203(b). (Doc. 31 at 6.) The court has doubts as to the applicability of that section on this particular

-8-

issue.

A federal court sitting in diversity applies federal procedural law and the substantive law that would be applied by the forum state. Burnham, 403 F.3d at 712. Application of a statute of limitations is a substantive matter, for which federal courts will generally look to state law. Id. In so doing, the federal court will also consider state law regarding service of process and commencement of the action so as to avoid having different results on a statute of limitations question merely because the case was presented in federal court instead of state court. Walker v. Armco Steel Corp., 446 U.S. 740, 744-46, 100 S. Ct. 1978, 1982-83, 64 L. Ed. 2d 659 (1980). Thus, if presented with the question of whether this case is barred by the statute of limitations, the court would look to section 203(b).

However, this matter is not before the court on a statute of limitations question. Indeed, the statute of limitations is an affirmative defense that must be pleaded in the answer; but, there is no answer on file because service of process is in dispute. Fed. R. Civ. P. 8(c). Thus, it would be premature for the court to address statute of limitations issues. Those matters may ultimately come into play, but not until such time, if ever, as defendant is actually and properly served.

Instead, the question is whether the case should be dismissed for failure to timely effect service. It is an issue of timeliness, and whether plaintiff has been diligent in prosecuting this case. Even in diversity actions, timing issues are controlled by the Federal Rules of Civil Procedure. See Walker, 446 U.S. at 751, 100 S. Ct. at 1985. When process has not been timely served, the court is guided

-9-

by Rule 4(m):

> If service of the summons and complaint is not
> made upon a defendant within 120 days after the
> filing of the complaint, the court, upon motion
> or on its own initiative after notice to the
> plaintiff, shall dismiss the action without
> prejudice as to that defendant or direct that
> service be effected within a specified time;
> provided that <u>if the plaintiff shows good cause</u>
> for the failure, the court shall extend the time
> for service for an appropriate period.

(Emphasis added).  The Tenth Circuit has prescribed a two-pronged inquiry for evaluating a failure to effect timely service under Rule 4(m): 1) the court must determine whether a plaintiff has shown good cause for failure to obtain service - if so, then a plaintiff is entitled to an extension of time to perfect service; 2) if a plaintiff fails to show good cause, the court must still decide whether a permissive extension of time is warranted, or whether the case should be dismissed without prejudice.  <u>Espinoza v. United States</u>, 52 F.3d 838, 841 (10th Cir. 1995).

As the underlined portion of the preceding quote from Rule 4(m) shows, plaintiff bears the burden of showing good cause.  Our circuit has generally defined good cause by what it is not: inadvertence, negligence, mistake of counsel or ignorance of the rules.  <u>See</u> <u>In re Kirkland</u>, 86 F.3d 172, 176 (10th Cir. 1996).  Nor does absence of prejudice to a defendant amount to good cause.  <u>Despain v. Salt Lake Area Metro Gang Unit</u>, 13 F.3d 1436, 1439 (10th Cir. 1994).  Finally, the fact that a defendant may have actual notice of the pending action does not find its way into the good cause calculus.  <u>Id.</u>

Despite plaintiff's failure to meet his burden to show that service was properly made, the court is persuaded that he has shown

-10-

good cause.   While there is no direct evidence that defendant has absconded or attempted to avoid service, there is nevertheless a strong suggestion that this may be the case.   Plaintiff's investigators, along with sheriff's deputies from various counties, have contacted defendant's relatives, yet no one knows where he is. Those facts alone do not suggest foul play by defendant.   However, despite the fact that no one seems to know defendant's whereabouts, attorneys and insurance companies have stepped forward to represent him.   The house where defendant's mother was served is now abandoned, and defendant's relatives seem to have given conflicting stories about their understanding of his current residence.

Under these circumstances, the court reluctantly gives plaintiff another 90 days to perfect service.   But plaintiff is now on notice - he must perfect service in order to maintain this suit.   If he fails to serve defendant properly within 90 days, this case will be dismissed without prejudice.   By the same token, let defendant also be on notice - the court will not look favorably on anyone who attempts to avoid service of process.   While defendant has no duty to present himself to plaintiff for service, efforts to avoid service can toll the statute of limitations indefinitely.   K.S.A. 60-517.

IT IS SO ORDERED.

Dated this 26th day of January 2006, at Wichita, Kansas.

s/Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-11-